**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KATHRYN FORTUNATO, et al.,** | : | |
| **Plaintiffs** | : | **No. 1:17-cv-00201** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **CGA LAW FIRM, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is Defendants CGA Law Firm and Margaret Driscoll's motion for summary judgment. (Doc. No. 27.) For the reasons explained herein, the Court will deny the motion.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiffs Kathryn Fortunato, Elizabeth Fortunato, and Alexander Fortunato (collectively referred to herein as "Plaintiffs") are the children of Kim Fortunato ("Ms. Fortunato"), and the grandchildren of the late Wallace Fremont ("Mr. Fremont"), neither of whom is a party to the above-captioned action. (Doc. No. 29 ¶¶ 1-3, 7-8.) Mr. Fremont had three children, including Ms. Fortunato, as well as Peter Fremont ("Peter Fremont") and Gwenn Fremont ("Gwenn Fremont"). (Id. ¶ 7.) Margaret Driscoll ("Ms. Driscoll"), an attorney admitted to practice law in the Commonwealth of Pennsylvania, is an attorney employed with CGA Law Firm ("CGA"), a law firm located in York County, Pennsylvania (id. ¶¶ 4-5), and her primary practice areas include, inter alia, estate planning and administration (id. ¶ 6).

---

[1] Unless otherwise indicated, the following relevant facts of record are derived from Defendants' statement of material facts. (Doc. No. 29.)

Prior to his death in September of 2015 (id. ¶ 65), Mr. Fremont sought the investment services of Merrill Lynch ("Merrill Lynch") (id. ¶ 23), and in October of 2011, Mr. Fremont executed a client relationship agreement with Merrill Lynch and established three cash management accounts, as well as an individual retirement account (id. ¶ 24).[2] With regard to the Accounts, Mr. Fremont executed three "transfer on death" ("TOD") agreements,[3] and an IRA client relationship agreement, "which designated [Ms. Fortunato] and Peter Fremont each as fifty percent (50%) beneficiaries of the assets held in the Accounts upon Mr. Fremont's death." (Id. ¶ 25.) For estate-planning purposes, TOD or "payable on death" ("POD") status renders an asset subject to beneficiary designations.[4] Mr. Fremont used the services of Saly Glassman ("Ms. Glassman"), a Merrill Lynch financial advisor, in connection with establishing and maintaining the Accounts. (Id. ¶ 30.)

In August of 2014, Mr. Fremont spoke with Ms. Glassman and explained to her "that he had a falling out with his son, Peter [Fremont]" and inquired about updating his estate plan so as to account for this change in his relationship with his son. (Id.) Specifically, Plaintiffs contend that Mr. Fremont sought to revise the distribution of his assets so that, inter alia, his grandchildren, Plaintiffs, would receive 30% of his assets, and Peter Fremont would receive 20%, an amount lower than the 50% he was designated to receive under the will that was operative at that time. (Doc. No. 31 ¶ 38(c)). Upon learning that Mr. Fremont wished to reduce his son's share in his assets, Ms. Glassman referred Mr. Fremont to Ms. Driscoll for purposes of estate planning services (Doc. No. 29 ¶ 31), and "knew that the purpose of the introduction was

---

[2] The Court refers to the cash management accounts and individual retirement account collectively as the "Accounts" herein.

[3] The "TOD" designation is also sometimes referred to as "payable on death" ("POD").

[4] See also Transfer-on-Death Registration, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining transfer-on-death registration as "[t]he transfer without probate of a decedent's ownership of registered assets, such as securities, to a designated beneficiary").

because Mr. Fremont wanted to reduce . . . Peter's share[] in Mr. Fremont's estate" (id. ¶ 33).[5]

Merrill Lynch did not provide a client portfolio with information as to the Accounts' beneficiary

designations upon the referral being made. (Id. ¶ 36). After the referral from Ms. Glassman, Mr.

Fremont and Ms. Driscoll met with each other in late August of 2014. (Id. ¶ 37.)

Ms. Driscoll then prepared and completed a new, revised will for Mr. Fremont (the

"Will"). Mr. Fremont "had the opportunity to read, review[,] and sign the Will" (id. ¶ 39), and

also discussed the Will with Ms. Fortunato through email in October of 2014 (id. ¶ 40). In the

course of reviewing the proposed revised Will, Ms. Driscoll had communicated with Mr.

Fremont, through Ms. Fortunato, who confirmed to Ms. Driscoll that Mr. Fremont "did not want

any of his real property to go to his son[,] Peter" and that he "wanted 20% of his Merrill Lynch

accounts to go to Peter."[6] (Id. ¶ 41, Doc. No. 31 ¶ 41.) Additionally, in response to an email

from Ms. Fortunato as to her father's intent to reduce Peter Fremont's share of his assets as it

related to the Accounts, Ms. Driscoll stated that "[g]enerally speaking real estate and all other

kinds of assets that are not personal property . . . are all included in the residue of the estate and it

is 20% of the residue that is going to Peter." (Doc. No. 31 ¶ 42.) At the time she prepared the

Will, Ms. Driscoll was unaware "that the Accounts contained beneficiary designations." (Doc.

No. 29 ¶ 58.)

---

[5] The parties dispute the nature of the purpose underlying the referral, with Defendants stating that the referral was made to Ms. Driscoll "to change [Mr. Fremont's] power of attorney and other estate planning documents" (Doc. No. 29 ¶ 31), and Plaintiffs stating that the referral was made "because Mr. Fremont wanted to reconsider his estate plan . . . in light of the falling out he had with his son" (Doc. No. 31 ¶ 31).

[6] The parties dispute the scope of the clarification as to the distribution of certain property from Mr. Fremont's estate. Defendants state that "Mr. Fremont did have a clarification as to the distribution of his real estate" (Doc. No. 29 ¶ 41), while Plaintiffs "admit that Mr. Fremont did not want any of his real property to go to his son" but also point to evidence of record indicating that Ms. Fortunato confirmed with Ms. Driscoll through email "that Mr. Fremont wanted 20% of his Merrill Lynch accounts to go to Peter" (Doc. No. 31 ¶ 41).

Mr. Fremont died in September of 2015, and Ms. Fortunato was consequently appointed executor of the estate. (Id. ¶ 65.) Upon Mr. Fremont's death, Ms. Driscoll became aware, for the first time, of the TOD status associated with the Accounts after she was contacted by Ms. Glassman, who informed her that the Accounts had such a designation. (Id. ¶ 66.) Ms. Driscoll subsequently sent an email to Ms. Glassman stating that she was unaware of the TOD designation and that, had she been aware of the TOD status on the Accounts, "[t]hat certainly would have been a huge red flag for [her] to be sure that the designations were changed to match [Mr. Fremont's] intent." (Doc. No. 31 ¶ 38(e)). The named beneficiaries and/or "transfer on death assignee[s] for the Merrill Lynch Accounts" include Ms. Fortunato, Peter Fremont, and Plaintiffs. (Id. ¶¶ 67-69.) As a result of the TOD status associated with the Accounts, Peter Fremont was designated as a 50% beneficiary "of the assets held in the Accounts upon Mr. Fremont's death." (Id. ¶ 25.)

**B.      Procedural Background**

Plaintiffs initiated the above-captioned action by filing a complaint against Defendants in this Court on February 2, 2017 as intended third-party beneficiaries under the Will, claiming damages of $450,000.00. (Doc. No. 1.) In the complaint, Plaintiffs asserted a claim for legal malpractice (id. at 6), and a claim for breach of contract (id. at 8), against Defendants. On March 29, 2017, Defendants filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 7), which the Court granted in part and denied in part on July 24, 2017, dismissing Plaintiffs' legal malpractice claim but denying the motion as to the breach of contract claim (Doc. Nos. 16, 17). Defendants then filed an answer to the complaint on August 11, 2017. (Doc. No. 19.) On January 10, 2018, Defendants filed the instant motion for summary judgment (Doc. No. 27), along with a brief in support (Doc. No. 28), and statement

of facts (Doc. No. 29).  On January 31, 2018, Plaintiffs filed a brief in opposition (Doc. No. 30),

as well as a responsive statement of facts (Doc. No. 31).  On February 14, 2018, Defendants filed

a reply brief.  (Doc. No. 32.)  Having been fully briefed, Defendants' motion is ripe for

disposition.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs the grant of summary judgment.  Parties may

move for summary judgment on particular claims or defenses, or on a part of each claim or

defense.  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Id.  "Material facts are those that could affect the outcome of the proceeding,

and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable

jury to return a verdict for the nonmoving party."  Pearson v. Prison Health Serv., 850 F.3d 526,

534 (3d Cir. 2017) (citation omitted).

In pertinent part, parties moving for, or opposing, summary judgment must support their

position by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for the purposes of the motion only), admissions, interrogatory answers, or other

materials."  Fed. R. Civ. P. 56(c)(1)(A).  "The non-moving party cannot rest on mere pleadings

or allegations," El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth

specific facts showing that there is a genuine issue for trial."  Saldana v. Kmart Corp., 260 F.3d

228, 231-32 (3d Cir. 2001).  The Court "must view all evidence and draw all inferences in the

light most favorable to the non-moving party" and will grant the motion only "if no reasonable

5

juror could find for the non-movant." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).

## III.    DISCUSSION

### A.    Breach of Contract Claims in the Context of Alleged Attorney Malpractice[7]

A plaintiff must generally establish three elements to support a breach of contract claim: (1) "the existence of a contract, including its essential terms"; (2) "a breach of a duty imposed by the contract"; and (3) "resultant damages." See Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002) (citing Corestates Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  In the context of a claim for breach of contract arising out of alleged attorney malpractice, Pennsylvania law recognizes "that every contract for legal services contains, as an implied term of the contract, a promise by the attorney to render legal services in accordance with the profession at large." See id. at 694 ("Thus, when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large.").  "Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large." Id.  While a plaintiff may establish a breach of contract claim by demonstrating that the attorney's representation did not comport with the relevant professional standard, a plaintiff may also establish a breach of contract claim as a result of the attorney's "fail[ure] to follow a specific instruction of a client." See id.  A plaintiff need not, however, point to such failure on the part of the attorney to follow an instruction, if the plaintiff can show

---

[7] The parties agree that Pennsylvania law governs Plaintiffs' contract claim, and the Court analyzes the claim accordingly.

that the attorney's legal service was inconsistent with the standard adhered to by the profession at large.[8]  See id. at 697.

### B.  Arguments of the Parties

#### 1.  Defendants' Arguments in Support of Summary Judgment

Defendants assert that summary judgment is appropriate because the evidence of record demonstrates that Plaintiffs cannot establish a prima facie case for a breach of contract claim. (Doc. No. 28 at 4.)  Specifically, Defendants state that "Plaintiffs . . . must set forth evidence that Ms. Driscoll breached her specific contractual duty to provide legal services in a manner consistent with the profession at large[,]" and that Plaintiffs must demonstrate that "Ms. Driscoll's estate planning legal services in drafting the Will . . . did not effectuate the testamentary intent of Mr. Fremont."  (Id. at 6.)  According to Defendants, the record is devoid of "any evidence that Mr. Fremont requested Ms. Driscoll to do anything with the Merrill Lynch Investment Accounts," and while "Ms. Driscoll was engaged by Mr. Fremont to prepare a new will and power of attorney for Mr. Fremont[,] Ms. Driscoll was not engaged to confirm and/or assist Mr. Fremont in changing the beneficiary designations on the Accounts."  (Id. at 6-7.)  As to the attorney-client relationship between Ms. Driscoll and Mr. Fremont, Defendants call attention to the following issues: (1) the scope of engagement underlying the attorney-client relationship; (2) Mr. Fremont's referral to Ms. Driscoll by Merrill Lynch; and (3) Ms. Driscoll's ability to change the beneficiary designations on the Accounts.

---

[8] In Gorski, the Superior Court stated that "a plaintiff's successful establishment of a breach of contract claim against an attorney . . . does not require proof . . . that an attorney failed to follow a specific instruction of the client[,]" noting that "if a plaintiff demonstrates . . . that an attorney has breached his or her contractual duty to provide legal service[s] in a manner consistent with the profession at large, then the plaintiff has successfully established a breach of contract claim against the attorney."  See Gorski, 812 A.2d at 692.

In regard to the scope of Mr. Fremont's engagement of Ms. Driscoll's legal services, Defendants argue that Ms. Driscoll performed the task she was requested to complete by Mr. Fremont: to "revise his Will and Power of Attorney." (Id. at 8.)  Further, Defendants contend that "Mr. Fremont never mentioned, even upon inquiry, that the Accounts were" transferable or payable upon death and "subject to beneficiary designations," stating that "Ms. Driscoll's notes confirm that she questioned Mr. Fremont about beneficiary designations" and "that the Accounts were identified, discussed[,] and managed by the referral source, [Ms.] Glassman." (Id. at 9.) Additionally, Defendants state that "no one from Merrill Lynch, despite referring Mr. Fremont to Ms. Driscoll and as managers of the Accounts, mentioned the TOD/POD nature of the Accounts" (id. at 10), and that Ms. Driscoll became aware of such designation on the accounts only upon the death of Mr. Fremont "when Ms. Glassman, for the first time, contacted Ms. Driscoll specifically to inform her that the Accounts were TOD." (Id. at 11.)

As to the referral made by Ms. Glassman, Defendants state that "[i]t is undisputed that the referral of Mr. Fremont to Ms. Driscoll came from" Ms. Glassman, who "knew that the purpose of the introduction was because Mr. Fremont wanted to reduce . . . Peter's share in [his] retirement." (Id. at 13.)  According to Defendants, despite the fact that "the Accounts were, at all relevant times, maintained and managed by Ms. Glassman . . . Merrill Lynch inexplicably failed to provide the client portfolio with the referral or any other information regarding the beneficiary designations [inherent] with the Accounts." (Id. at 12-13.)  Defendants contend, therefore, that Ms. Glassman, "as the manager of the Accounts and Mr. Fremont's financial advisor, had the affirmative duty to inform Mr. Fremont of the steps necessary to change his beneficiary designations on the Accounts but failed to do so." (Id. at 13.)

In addition, pointing to "legal impossibility," Defendants argue that "nothing Ms. Driscoll could have done in the Will would have changed the beneficiary designations on those Accounts" because such changes require "that the account holder execute a new agreement or written and notarized revocation of the [TOD] and deliver [such documentation] to Merrill Lynch." (Id. at 14.) To that end, Defendants cite language from the TOD designation on the Accounts that they maintain is demonstrative that it is the "duty and responsibility of the [Decedent] to notify [Merrill Lynch] of any changes in the beneficiaries, by death or otherwise." (Id. at 15) (alteration in original). According to Defendants, therefore, "even if Ms. Driscoll specifically referenced the Accounts in the Will, that reference would not have altered in any way the express contracts of the beneficiary designations held by Merrill Lynch." (Id.)

## 2. Plaintiffs' Arguments in Opposition to Summary Judgment

In opposition, Plaintiffs argue that summary judgment is improper because Ms. Driscoll:

> knew Mr. Fremont's intent and received instruction from Mr. Fremont that he wanted to leave the Grandchildren 30% of the assets in the Merrill Lynch Accounts, knew the bulk of Mr. Fremont's estate was comprised of the assets in the Accounts, failed to inquire about the Accounts or learn any information regarding those accounts, and did nothing to ensure that Mr. Fremont's intent was effectuated.

(Doc. No. 30 at 11.)

More specifically, Plaintiffs dispute Defendant's assertion that Mr. Fremont's retention of Ms. Driscoll was "for the limited purpose of writing a will and power of attorney," referring to evidence demonstrating otherwise, including Ms. Driscoll's "own admission, made after Mr. Fremont died, that if she learned that the Accounts . . . had TOD designations, it 'certainly would have been a huge red flag for [her],'" and communications between Glassman and Ms. Driscoll in which Glassman conveyed to Ms. Driscoll that she referred Mr. Fremont to her for purposes of making changes to his estate plan. (Id. at 13.) Further, Plaintiffs state that "[u]nder the

9

Pennsylvania Rules of Professional [C]onduct, an attorney may only limit the scope of her

representation with the client's express consent, and even then, only if the limitation is

reasonable given the circumstances." (Id. at 14) (citing Pa. R.P.C. 1.2(c)). According to

Plaintiffs, Ms. Driscoll's representation of Mr. Fremont was never so limited, and, "[r]egardless,

it is beyond question that Mr. Fremont wanted his Grandchildren to receive 30% of the assets in

the Merrill Lynch Accounts and Peter to receive 20% of the assets in the Accounts," and that Mr.

Fremont instructed Ms. Driscoll as to the intended distribution of his assets.[9] (Id.)

Additionally, Plaintiffs argue that any potential error or negligence on the part of Mr.

Fremont is immaterial to the instant breach of contract claim because: (1) "under the law Mr.

Fremont cannot be deemed contributor[ily] negligent for failing to guard against [Ms. Driscoll's]

failure of performance of her duties to her client"; (2) "contributory negligence is [not a] defense

in a breach of contract case"; and (3) "there is no concept of joint tortfeasors that is applicable in

a breach of contract case." (Id. at 17.) In support, Plaintiffs refer to their expert report, which

they argue "clearly sets forth the scope of representation for an estate planning attorney, the

duties imposed on an estate planning attorney, and [Ms. Driscoll's] failure to fulfill her

contractual duties." (Id.) In addition, Plaintiffs state that Ms. Fortunato's knowledge of the

Accounts and involvement in this aspect of her father's estate planning were limited (id. at 17-

18), and that Ms. Driscoll assured her through email that "[g]enerally speaking real estate and all

other kinds of assets that are not personal property . . . are all included in the residue of the estate

and it is 20% of the residue that is going to Peter." (Id. at 18.) Plaintiffs maintain that,

accordingly, Ms. Fortunato "had no reason to believe that her father's clearly stated intent was

[9] Plaintiff also cite their expert report, which they assert demonstrates that Ms. Driscoll's
"representation of Mr. Fremont as an estate planning attorney was not limited to writing a will
and power of attorney, that she had a duty to do more, and that she failed to follow the
instruction of Mr. Fremont." (Doc. No. 30 at 14.)

not being met." (Id.) Plaintiffs also take issue with Defendants' argument as to legal

impossibility, stating that "[n]ot only does it rely on facts that are in dispute, and is without

citation to legal authority," but also contradicts Ms. Driscoll's "own admission that if she knew

that the Merrill Lynch Accounts had a TOD designation, it 'certainly would have been a huge

red flag for [her] to be sure that the designations were changed to match his intent.'" (Id.) In

sum, Plaintiffs urge the Court to reject "Defendants' argument [] that an estate planning attorney

has no duty to find out information about the assets of a client or give advice regarding those

assets" (id. at 19), on the basis that the evidence of record demonstrates that Ms. Driscoll

"mistakenly assumed the Accounts passed through the residue provision of Mr. Fremont's Will,

without any confirmation, and then assured Mr. Fremont and [Ms. Fortunato] that Mr. Fremont's

intent was met in his Will" (id. at 20).

## C. Whether Defendants are Entitled to Summary Judgment

The Court concludes that summary judgment is improper because there are genuine

disputes of material fact as to Ms. Driscoll's knowledge of Mr. Fremont's intent, as well as her

awareness of the Accounts' TOD status. For example, Defendants maintain that "Ms. Glassman

spoke at length to Ms. Driscoll regarding Mr. Fremont's desire to revise his estate planning

documentation[,] yet never mentioned the TOD nature of the Accounts" (Doc. No. 29 ¶ 32),

citing Ms. Driscoll's time log or "matter ledger report" that includes a notation indicating a

"[t]elephone call from [Ms.] Glassman to discuss estate planning for Wally Fremont" occurred

on August 22, 2014 (Doc. No. 27, Ex. C at 141). Plaintiffs, however, state that "[t]he evidence

shows that Ms. Glassman spoke to [Ms.] Driscoll for less than 30 minutes in an introductory

call . . informed her of Mr. Fremont's situation with his son Peter, and had very little ongoing

dialogue with Driscoll after that[,]" citing Glassman's deposition testimony that after making the

referral, she did not engage in many other communications with Ms. Driscoll (Doc. No. 27, Ex. D at 16).  The Court notes that Ms. Glassman also testified that as to Mr. Fremont's estate planning, she made such a referral because Mr. Fremont had "concerns about clarifying his intentions [and] updating his estate planning, because [she] was not qualified to do that."  (Id.) In light of such evidence, the Court finds that the level of information provided to Ms. Driscoll by Ms. Glassman about Mr. Fremont's estate planning needs is unclear and, therefore, the question of whether Plaintiffs have established a prima facie case of breach of contract is inappropriate for resolution at the summary judgment stage.

In addition, Plaintiffs have met their burden in adducing evidence that would permit a factfinder to conclude that Ms. Driscoll failed to follow an instruction from Mr. Fremont, or that Ms. Driscoll's estate planning services performed for Mr. Fremont were inconsistent with the standards applicable to the legal profession at large.  For example, Ms. Driscoll's notes from her meeting with Mr. Fremont demonstrate her awareness of Mr. Fremont's intent for Peter to receive a reduced amount of his assets, which Ms. Driscoll knew included the Accounts.  (Doc. No. 27-3 at 71.)  Further, Ms. Fortunato explicitly reiterated to Ms. Driscoll her father's intention of reducing his son's share in the estate when she sent her an email message to that effect.  (Id. at 103-04.)  Moreover, Ms. Driscoll understood the importance of the TOD designation, as it related to Mr. Fremont's intent to revise his well so as to reduce his son's share in his assets, as she remarked that knowledge of the TOD "would have been a huge red flag for [her]," upon being advised of the TOD status by Ms. Glassman.  (Id. at 116.)  Consequently, a reasonable factfinder could conclude that regardless of whether Ms. Driscoll was unaware of the TOD status of the Accounts at the time she prepared Mr. Fremont's revised will, Ms. Driscoll should have conducted further investigation into the nature of Mr. Fremont's assets in order to determine

whether any of the assets, like the Accounts, were subject to beneficiary designations that needed

to be changed in order to reflect Mr. Fremont's intent for his estate plan.[10]

Furthermore, the parties' respective expert reports also indicate that genuine issues of

material fact preclude the entry of summary judgment on Plaintiffs' breach of contract claim.

Here, the reports reach completely divergent conclusions, as Plaintiff's expert report concludes

that: (1) Ms. Driscoll "did not follow her client's instructions"; (2) Ms. Driscoll "did not render

estate planning services in accordance with the general practices of estate planning attorneys";

and (3) "had [Ms. Driscoll] rendered estate planning services in accordance with the general

practices of estate planning attorneys," Peter Fremont's share of the assets would have been

reduced in accordance with Mr. Fremont's intent, as described supra.  (Doc. No. 30-2 at 2.)

Conversely, Defendants' expert report concludes, in essence, that Ms. Driscoll "fulfilled her

obligations under the contract with [Mr. Fremont] by preparing [his] wills in accordance with

[his] wishes" and that Ms. Driscoll's "decision to rely on the information received from [Mr.

Fremont] was appropriate and consistent with the profession at large."  (Doc. No. 27-9 at 8.)

Additionally, both expert reports raise factual disputes, and, therefore, further

demonstrate that the entry of summary judgment is inappropriate.  Defendants' report states,

inter alia, that Mr. Fremont "engaged [Ms.] Driscoll to prepare a new will and a power of

attorney[,]" and that "[u]pon inquiry by [Ms.] Driscoll as to the existence of beneficiary

designations on [the] [A]ccounts," Mr. Fremont "failed to advise" Ms. Driscoll of such

---

[10] While the parties' briefing does not state explicitly what standard would be applicable to the "profession at large" in this regard, the Court views Pennsylvania Rules of Professional Conduct 1.1, which mandates that a lawyer "provide competent representation to a client," to be instructive, for the Rules of Professional Conduct have been utilized to evaluate a lawyer's professional duty in an action involving alleged legal malpractice.  See Jani v. O'Meara, No. 3322 EDA 2015, 2016 WL 6820534, at *4 (Pa. Super. Ct. Nov. 18, 2016) (acknowledging rule barring initiation of a frivolous action and concluding that attorney "had a professional obligation not to sue [another party], no matter what his client wanted").

designations. (Doc. No. 27-9 at 6.) The report also states that Ms. Glassman "informed [Mr. Fremont] to take his Merrill Lynch statements with him to the meeting with [Ms.] Driscoll, but [he] did not do so" and that "[a]t the time of [his] conversations or meetings with [Ms.] Driscoll," Mr. Fremont "understood the nature of his assets . . . and the intended disposition of his assets." (Id. at 7.) Plaintiffs' expert report, however, provides a factual account that contradicts that of Defendants' expert report. For example, it states that the revised Will underwent several drafts, and following the execution of the second draft in October of 2014, Ms. Fortunato "contacted Ms. Driscoll to advise that [Mr. Fremont] wished for his son to have 20% of the Merrill Lynch [A]ccounts, rather than 20% of all of [Mr. Fremont's] residuary estate." (Doc. No. 30-2 at 4.) Further, the report states that "[a]lthough Ms. Driscoll was clearly instructed by [Mr. Fremont] to include the Merrill Lynch [A]ccounts in his estate plan, Ms. Driscoll made no inquiry into the titling or ownership of the . . . [A]ccounts." (Id.) The differing factual accounts proffered by the competing expert reports further demonstrate the propriety of denying Defendants' motion. See, e.g., Rooney v. City of Phila., 623 F. Supp. 2d 644, 656 (E.D. Pa. 2009) ("To the extent the differing opinions must be reconciled, such a factual interpretation is within the province of a jury. It is not for the Court to determine a winner in this battle of the experts."); see also Elec. Ins. Co. v. Electrolux N. Am., Inc., Civil Action No. 09-3792, 2011 WL 5825981, at *4 (D.N.J. Sept. 19, 2011) ("Summary judgment is inappropriate where expert reports and affidavits present conflicting testimony as to a material fact.").

**IV.     CONCLUSION**

Based on the foregoing, Defendants' motion will be denied.  An appropriate Order

follows.

<u>s/ Yvette Kane</u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
